IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

BROOKE GROVE FOUNDATION,
INC. et al.,

    Plaintiffs,

v.     Case No.: 8:17-cv-03364-PWG

EDGAR C. BRADFORD et al.

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Brooke Grove Foundation, Inc. ("Brooke Grove") is a creditor of a decedent's estate. The company here seeks to return a parcel of real property to the estate, arguing the personal representative (the decedent's son, Edgar C. Bradford) violated the Maryland Uniform Fraudulent Conveyance Act ("MUFCA") when he transferred the property to himself for no consideration. It also seeks a declaration that the son's preexisting federal and state tax liens do not encumber the property.

There can be little doubt that the conveyance was fraudulent under Section 15-204 of Maryland's Commercial Law, which proscribes conveyances that leave a transferor insolvent and that are unsupported by fair consideration. *See* Md. Code Ann., Com. Law § 15-204. Accordingly, I am granting Plaintiffs' Motion for Summary Judgment, ECF No. 41, and setting aside the conveyance. In doing so, I reject the United States's argument that its liens with respect to Mr. Bradford's unpaid taxes apply to the real property in question in spite of the

unlawful way in which he acquired it. The United States's Cross-Motion for Summary Judgment, ECF No. 47, is accordingly denied.

## FACTUAL BACKGROUND

This is a dispute over rights in property. The property in question, located at 1413 Morningside Drive in Silver Spring, Maryland, is the former home of Mr. Bradford's parents, Christine H. Bradford and Edgar E. Bradford Jr. The Bradfords bought the property in 1968 as tenants by the entirety. ECF No. 41-5. When Edgar E. Bradford Jr. died in 1983, his interest in the property extinguished, leaving his wife as the sole owner in fee simple. ECF No. 41-4. The property was part of her estate, and was far and away its most valuable asset, when she died on October 14, 2014. Amended Inventory 1, ECF No. 41-3.

Christine Bradford had spent the final year of her life at the Brooke Grove Rehabilitation and Nursing Center in Montgomery County, Maryland. Answer, ECF No. 18. A few weeks after she died, and after Mr. Bradford submitted her will to the Orphans' Court for Montgomery County, Petition for Administration 1, ECF No. 41-6, Brooke Grove filed a claim of $84,798.31 against the estate, Claim, ECF No. 41-9. The court soon admitted the will into probate and named Mr. Bradford as personal representative of the estate, consistent with the terms of the will. Administrative Probate Order, ECF No. 41-8; Petition for Administration 1.

On June 19, 2017, the Orphans' Court entered a judgment approving Brooke Grove's claim for $84,798.31. June 2017 Order, ECF No. 41-10. The order gave Mr. Bradford 45 days to obtain financing to pay the claim or, failing that, to enter into a listing agreement with a real estate agent to sell his mother's house. *Id.* Mr. Bradford, however, had just preempted that latter option only a few days earlier, when he signed a deed transferring the Morningside Drive property to himself. Deed, ECF No. 41-11. The deed, signed and notarized on June 14, 2017,

2

could not have been less subtle, stating that the transfer was "for and in consideration of ZERO DOLLARS ($-0-)." *Id.* at 1-3.

Brooke Grove soon filed an emergency petition to enforce the court's order and remove Mr. Bradford as personal representative, which the court granted on September 21, 2017. September 2017 Order, ECF No. 41-12. The order named attorney Helen M. Smith as the new personal representative of the estate. *Id.*

Brooke Grove and Ms. Smith (collectively, "Plaintiffs") filed this action on October 2, 2017, seeking an order invalidating the June 14, 2017 transfer to Mr. Bradford.[1] Complaint, ECF No. 2. Their Complaint accused Mr. Bradford of fraudulently conveying property in violation of the Maryland Uniform Fraudulent Conveyance Act ("MUFCA"), Md. Code Ann., Com. Law § 15-201 to -214; breaching his fiduciary duty as personal representative of the estate; and unjust enrichment. *Id.* at 6-9. The suit also named the State of Maryland and the United States as defendants, noting that both had obtained tax liens against Mr. Bradford in the Circuit Court for Montgomery County before he transferred the Morningside Drive property to himself.[2] *Id.* at 5-6. Plaintiffs sought a judgment declaring the tax liens did not encumber the property. *Id.* at 7.

The Maryland Comptroller's Office asked this Court to grant Plaintiffs' request for relief. ECF No. 13. The United States, though, opposed Plaintiffs' Motion for Summary Judgment,[3]

---

[1] The suit commenced in the Circuit Court for Montgomery County, Maryland. Complaint, ECF No. 2. The United States, having been served on October 13, 2017, removed the case to federal court pursuant to 28 U.S.C. § 1444 on November 13, 2017. Notice of Removal, ECF No. 1.

[2] The State of Maryland filed notice of two liens in 2016 against Mr. Bradford: one for $24,410.59 and another for $6,700.06. ECF No. 41-13. The United States also filed notice of liens against Mr. Bradford: once in 2014 for $31,040.87 and again in 2015 for $60,614.17. ECF No. 41-14.

[3] Plaintiffs seek summary judgment on Count I (MUFCA fraudulent conveyance) and Count II (breach of fiduciary duty). Pls.' Mot. for Summ. J., ECF No. 41. The motion does not cover Count III (unjust enrichment), but Plaintiffs acknowledge that the entry of judgment in their favor on either of the other two counts would resolve Count III. *See id.* at 5 n.3.

3

Pls.' Mot. for Summ. J., ECF No. 41, and filed a Cross-Motion for Summary Judgment of its own, Cross-Mot. for Summ. J., ECF No. 47. It argued that its preexisting liens against Mr. Bradford applied to property he subsequently acquired (albeit fraudulently, and voidably), including the Morningside Drive property, and that these liens enjoy priority over Plaintiffs' claim. Cross-Motion for Summ. J. 4-6.

Plaintiffs, in response, argued the federal tax liens never attached to the property because the transfer was void as an illegal fraudulent conveyance. Pls.' Reply 1-2, ECF No. 49. The United States did not dispute that this Court might have grounds to set aside the transfer under MUFCA. U.S. Surreply 2, ECF No. 51. It maintained, though, that the federal tax liens would nevertheless be enforceable against the property because the Court's judgment would have no retroactive effect – that is, it would declare the transfer void, but not void *ab initio*. *Id.*

The parties have brief their arguments in full. No hearing is necessary. See Loc. R. 105.6.

## STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure oblige a court to enter summary judgment in a movant's favor upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of material fact is genuine if the evidence would allow the trier of fact to return a verdict for the nonmoving party." *United Bank v. Buckingham*, 301 F. Supp. 3d 561, 568 (D. Md. 2018). In reviewing the motion, the court must view the facts and make all reasonable inferences "in the light most favorable to the nonmoving party." *Bauer v. Lynch*, 812 F.3d 340, 347 (4th Cir. 2016).

## DISCUSSION

Plaintiffs seek two forms of relief. First, they urge the Court to set aside the June 2017 conveyance of the Morningside Drive property, returning the property to Mr. Bradford's mother's estate. Second, they ask the Court to declare that the state and federal tax liens are not attached to the property. These requests present distinct legal issues. I will address each in turn.

### Fraudulent Conveyance

Plaintiffs' contention that the 2017 conveyance violated MUFCA rests on two alternative theories. They first argue the conveyance was illegal under Md. Code Ann., Com. Law § 15-204 because it rendered the estate insolvent. They argue, in the alternative, that it violated § 15-207 because Mr. Bradford had the "actual intent" of hindering, delaying, or defrauding creditors. Because I conclude Plaintiffs are entitled to judgment as a matter of law under § 15-204, there is no need to address their second theory.

Section 15-204 provides: "Every conveyance made . . . by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made . . . without a fair consideration." Md. Code Ann., Com. Law § 15-204. Maryland courts have carved this provision into its constituent elements, holding that a fraudulent conveyance under § 15-204 requires: "(1) a conveyance, (2) the debtor either already is insolvent, or will be made insolvent by this conveyance; (3) the existence of a debtor-creditor relationship; and (4) lack of fair consideration." *Greystone Operations, LLC v. Steinberg*, No. 454, 2017 WL 1365365, at *3 (Md. Ct. Spec. App. Apr. 12, 2017).

Mr. Bradford has not placed any of these elements in dispute. As to the first element, the statute defines the term "conveyance" as broadly including "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and

5

also the creation of any lien or incumbrance." Md. Code Ann. § 15-201(c). Mr. Bradford has not denied that the 2017 transfer comes within this definition.

Moving on, the statute provides that a person is considered "insolvent" for purposes of § 15-204 "if the present fair market value of his assets is less than the amount required to pay his probable liability on his existing debts as they become absolute and matured." *Id.* § 15-202(a). Here, Mr. Bradford filed with the Orphans' Court an amended inventory dated March 31, 2016, showing the estate was worth $320,944.17. Amended Inventory, ECF No. 41-3. Of that, the Morningside Drive property accounted for $315,400. *Id.* at 2. In transferring the property to himself for no consideration, Mr. Bradford appears to have left the estate with less than $6,000 in assets – far less than the roughly $85,000 Brooke Grove had been seeking from the estate over the previous three years. Plainly, the transfer left the estate insolvent within the meaning of § 15-202(a). *See In re Anton Motors, Inc.*, 177 B.R. 58, 61 (Bankr. D. Md. 1995). Again, Mr. Bradford has not disputed this.

There is no dispute over the remaining two elements, either. Mr. Bradford has not denied that Brooke Grove was a creditor of the estate. He likewise has not disputed that the June 2017 transfer lacked fair consideration. The Maryland statute specifies that consideration is considered fair where it is given "[i]n exchange for the property . . . , as a fair equivalent for it and in good faith." Md. Code Ann., Com. Law § 15-203(1). "Proof of the absence of any consideration whatsoever . . . places significant burdens upon the transferee to establish the validity of the transfer." *In re Colandrea*, 17 B.R. 568, 579 (Bankr. D. Md. 1982). Here, the June 14, 2017 deed indicates that Mr. Bradford, acting as personal representative for his mother's estate, transferred the Morningside Drive property to himself for no consideration

whatsoever. Deed 1. It would be hard to argue that this transfer was supported by fair consideration, and, indeed, Mr. Bradford has not.

Mr. Bradford is unrepresented by counsel. While he did file a response in opposition to Plaintiffs' motion for summary judgment, *see* Bradford Objection, ECF No. 48, his submission and other documents he has filed with this Court fail to address the legal question this case presented. Rather, they serve to air Mr. Bradford's allegations that Brooke Grove did not properly care for his mother while she resided at the facility.[4] *See* Bradford Objection; *see also* Answer, ECF No. 18; Supplement to Answer, ECF No. 19; Second Supplement to Answer, ECF No. 20. Mr. Bradford is free to pursue these allegations in a separate lawsuit,[5] if that is his wish. Here, though, the only transaction or occurrence at issue is the June 2017 transfer of the Morningside Drive property. *See* Fed. R. Civ. P. 13(a)(1); *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 219 (4th Cir. 2006). Mr. Bradford's allegations about the treatment his mother received while at Brooke Grove between December 2013 and October 2014, however disturbing they may be to him, have no bearing on this issue.

Perhaps the only relevant contention Mr. Bradford makes in his objection to Plaintiffs' motion for summary judgment is this: "As executor of my Mother's Estate I can put the property in my name and obtain a loan to pay the creditors." Bradford Objection. This claim is most decidedly false. *See* Md. Code Ann., Est. & Trusts § 7-101 (establishing that a personal representative "is a fiduciary [who] is under a general duty to settle and distribute the estate of

---

[4] Along these lines, Mr. Bradford has asked this Court for an order requiring Brooke Grove to provide him with an "itemized bill" identifying the expenses associated with his mother's care, as well as the drugs his mother received during her stay at the facility. ECF No. 53. His request is unrelated to the issues presented in this litigation and is therefore denied.

[5] Alternatively, Mr. Bradford likely could have filed a counterclaim against Brooke Grove in this case, but he did not, and the deadline for doing so has passed. *See* Scheduling Order, ECF No. 27 (setting an April 10, 2018 deadline for amendment of pleadings and joinder of third parties and a July 31, 2018 discovery cutoff).

the decedent in accordance with the terms of the will and the estates of decedents law as expeditiously and with as little sacrifices of value as is reasonable under the circumstances"); *Lampton v. LaHood*, 617 A.2d 1142, 1151 (Md. Ct. Spec. App. 1993) (explaining that a personal representative owes a fiduciary duty to creditors of the decedent); *see also Beyer v. Morgan State Univ.*, 800 A.2d 707, 716 (Md. 2002) (stating that personal representatives must not engage in self-dealing). Mr. Bradford's decision to transfer the property to himself for no consideration (and without prior authorization from the Orphans' Court) emptied the estate of the bulk of its assets, effectively blocking Brooke Grove from recovering on its claim. This transaction constitutes a fraudulent conveyance under Md. Code Ann., Com. Law § 15-204. *Cf. Sangston v. Gaither*, 3 Md. 40 (1852) ("It is [a debtor's] duty to apply all his property to the payment of all his creditors, subject to such preferences as he may declare, and if he omits this duty, the law stamps the assignment as fraudulent and void.").

Available remedies for a fraudulent conveyance can be found in § 15-209(a)(1), which provides in part:

> If a conveyance or obligation is fraudulent as to a creditor whose claim has matured, the creditor, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or immediately from such a purchaser, may:
> (1) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy the claim . . . .

Md. Code Ann., Com. Law § 15-209(a)(1). Plaintiffs' claim has matured. *See* June 2017 Order. I conclude, accordingly, that they are entitled under § 15-209(a)(1) to have the conveyance set aside.

## Tax Liens

Having set aside the conveyance, I will now turn to Plaintiffs' contention that the state and federal tax liens do not encumber the property.

The State of Maryland has not challenged Plaintiffs' position. *See* ECF No. 13. The United States, though, has filed a Cross-Motion for Summary Judgment, arguing it holds valid liens against the Morningside Drive property and that those liens are entitled to priority over Plaintiffs' interests. *See* Cross-Mot. for Summ. J. 1. The issue presents a pure question of law, and since the parties have not placed any facts in dispute, a decision at the summary judgment stage is proper. *See DiMeglio v. Haines*, 45 F.3d 790, 794 (4th Cir. 1995).

To support its case, the United States has submitted declarations from Internal Revenue Service ("IRS") and U.S. Department of Justice ("DOJ") Tax Division officials attesting that Mr. Bradford owed $124,253.98 in federal income taxes for the 2012 through 2014 tax years. *See* IRS Declaration 2-3, ECF No. 47-2; DOJ Declaration, ECF No. 47-3. The IRS filed a pair of forms, each labeled, "Notice of Federal Tax Lien," in the Circuit Court for Montgomery County, Maryland. ECF Nos. 47-7, 47-8. The forms made note of the following assessments:

| Date of Assessment | Unpaid Balance of Assessment |
|---|---|
| May 28, 2012 | $616.07 |
| June 3, 2013 | $30,424.80 |
| June 2, 2014 | $40,994.60 |
| June 8, 2015 | $19,619.57 |

*Id.* They explained that, as a result of each assessment, "there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue." *Id.*; *see* 26 U.S.C. § 6321.

Mr. Bradford's tax liens arose under Section 6321 of the Internal Revenue Code, which provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. There is no question that such liens apply to property a delinquent taxpayer acquires after the government files notice of the lien, so long as the lien remains enforceable. *See Glass City Bank v. United States*, 326 U.S. 265, 268 (1945); *In re Avis*, 178 F.3d 718, 721 (4th Cir. 1999).

A federal tax lien arises "at the time the assessment is made." 26 U.S.C. § 6322; *see Moco Invs., Inc. v. United States*, 362 F. App'x 305, 309 (3d Cir. 2010). Here, the United States notes, several of the assessments predate Mr. Bradford's mother's death in October 2014, and all of them predate the June 2017 transfer. The United States argues, accordingly, that the liens first attached to Mr. Bradford's beneficial interest in his mother's estate and then, following the June 2017 transfer, to his fee simple interest in the Morningside Drive property. *See* Cross-Mot. for Summ. J. 5-6.

A.

I start with the United States's assertion that its tax liens attached to Mr. Bradford's "right to inherit" from his mother upon her death in October 2014. U.S. Surreply 1. The United States does not dwell on this point in either its cross-motion or its surreply, and it is not clear whether it means to assert that this moment, when Mr. Bradford acquired a beneficial interest in his mother's estate, was when the federal tax liens became enforceable against the Morningside

Drive property. Such an argument, if successful, could be dispositive here, as it would it would give the IRS a toehold on the property some three years before Mr. Bradford formally transferred title to himself. To the extent, then, that this is the argument the United States is making, it merits some consideration.

My analysis of this issue begins with the Internal Revenue Code. The Supreme Court has observed that § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Drye v. United States*, 528 U.S. 49, 56 (1999) (quoting *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985)). The question here is whether the *possibility* that Mr. Bradford could inherit his Mother's interest in the Morningside Drive property qualifies as a property right of his under § 6321. If so, the federal tax liens will continue to encumber the property now that the Court has set aside the conveyance and returned the property to Mr. Bradford's mother's estate.

In and of itself, the federal tax lien statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Craft*, 535 U.S. 274, 278 (2002). That being so, a court must first look to state law "to determine what rights the taxpayer has in the property the Government seeks to reach." *Drye*, 528 U.S. at 58. The court then looks to federal law "to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.*

As to the first step, two Supreme Court cases are instructive. In *Drye v. United States*, the question was whether preexisting federal tax liens against a man's property under § 6321 applied to his inheritance as the sole heir of his mother's estate, even after the man disclaimed the inheritance under state law. 528 U.S. 49, 52 (1999). The Court explained: "[I]n determining

11

whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' 'the important consideration is the breadth of the control the taxpayer could exercise over the property.'" *Id.* at 61 (quoting *Morgan v. Comm'r of Internal Revenue*, 309 U.S. 78, 83 (1940)). Turning to the facts at hand, the Court observed that the man "had, at his mother's death, a valuable, transferrable, legally protected right to the property at issue," noting that state law endowed him with "the unqualified right to receive the entire value of his mother's estate (less administrative expenses), or to channel that value" to someone else. *Id.* (citation omitted). The Court concluded, accordingly, that the inheritance qualified as the man's "property" or "rights to property" within the meaning of § 6321 and was therefore subject to the preexisting federal tax liens. *Id.*

Three years later, in *United States v. Craft*, the Court considered whether a husband's tax liens attached to property he held with his wife as tenants by the entirety. 535 U.S. 274, 276 (2002). The Court first observed that, as a matter of state property law, the husband's co-ownership as a tenant by the entirety accorded him "some of the most essential property rights," among them "the right to use the property, to receive income produced from it, and to exclude others from it," as well as the right to alienate or encumber the property. *Id.* at 282-84. The Court assessed that these rights gave the husband sufficient control over the property to put it within the IRS's reach under § 6321. *Id.* at 288.

*Drye* leaves little doubt that the federal tax liens here apply to Mr. Bradford's beneficial interest in his mother's estate. *See* 528 U.S. at 61. That is not to say, though, that the lien applies to a particular parcel of real property within the estate at the time of his mother's passing. The critical issue, as the *Drye* Court explained, is the extent to which the interest holder could exercise control over the property in question. *See* 528 U.S. at 61. Here, I find that Mr.

Bradford's beneficial interest in the estate did not empower him to exercise virtually any control over the Morningside Drive property.

Under Maryland law, it is the personal representative – not the intended beneficiary under the decedent's will – who holds the power to sell, mortgage, or lease the property.[6] Md. Code Ann., Est. & Trusts § 7-401(n). State law also endowed the personal representative with the power to prosecute or defend litigation involving the property, pay off encumbrances on it, acquire property insurance, and – in theory, at least – to donate a conservation easement on the property to obtain federal tax benefits, provided he first obtained consent from interested parties. *Id.* §§ 7-401(k), (q), (y)(1), (dd).

Just as critically, state law obligates the personal representative to "fairly consider[] the interests of all . . . creditors." *Id.* § 7-101(a). Here, unlike in *Drye*, the holder of the beneficial interest did not have an "unqualified right to receive the entire value" of the estate in question (minus administrative expenses), 528 U.S. at 61, because Mr. Bradford's mother's estate had at least one creditor of its own. Maryland law required the personal representative to satisfy the estate's debts – including the $84,798.31 debt to Brooke Grove – before distributing assets to Mr. Bradford or any other beneficiaries under the will. Seeing as virtually all of the estate's worth was tied up in the Morningside Drive property, Mr. Bradford's chances of acquiring legal

---

[6] Granted, here, the Orphans' Court initially named Mr. Bradford as personal representative of the estate. *See* Administrative Probate Order. (I take judicial notice of the Orphans' Court filings that the parties attached as exhibits to their papers, which are public records. *See* Fed. R. Evid. 201(b)(2); Fed. R. Evid. 803(8)(A)(i).) This appointment vested Mr. Bradford with legal title to his mother's property, *see* Md. Code Ann., Est. & Trusts § 1-301(a), but only for the limited purpose of administering and distributing the estate, *see United States v. 12636 Sunset Ave., Unit E-2, W. Ocean City, Md.*, 991 F. Supp. 2d 709, 711 (D. Md. 2014). The United States has nowhere suggested that the appointment subjected the property to Mr. Bradford's tax liens, and, if it had, I would give the argument no credence, as the United States offers no authority from which I could conclude that Congress might have intended to expose decedents' estates to the tax liabilities of the personal representatives appointed to administer them.

title to the property were far from assured. (No doubt, this is why Mr. Bradford tried to transfer the property to himself for no consideration.)

These considerations lead me to conclude that Mr. Bradford's tax liens did not attach to the Morningside Drive property at the time of his mother's death in 2014. If they attached at all, it would have had to have happened when he fraudulently conveyed the property to himself in 2017. It is to this argument that I turn now.

B.

The United States did not contest Plaintiffs' contention that the June 2017 transfer was fraudulent. It argued, though, that its preexisting tax liens attached to the property regardless, and that, once attached, the liens could not be disturbed by any of the remedies available under Md. Code Ann., Com. Law § 15-209.

As before, I start with Section 6321 of the Internal Revenue Code. This provision makes plain that the failure to pay federal taxes upon demand creates a lien "upon all property and rights to property, whether real or personal, belonging to" the taxpayer. 26 U.S.C. § 6321. As already noted, the lien applies not only to property the taxpayer owns at the time of assessment, but to property he acquires at some later point in the life of the lien. *See Glass City*, 326 U.S. at 268.

It is clear enough that a *valid* conveyance to Mr. Bradford would have given the federal government a claim on the Morningside Drive property, as, in that case, the parcel would undoubtedly have qualified as "property . . . belonging to" Mr. Bradford. The question here is whether the real property *belonged* to Mr. Bradford, for purposes of § 6321, in spite of his acquisition of it through a fraudulent conveyance. *See United States v. Rodgers*, 461 U.S. 677, 690-91 (1983) ("[T]he Government's lien under § 6321 cannot extend beyond the property

14

interests held by the delinquent taxpayer."); *Markham v. Fay*, 74 F.3d 1347, 1356 (1st Cir. 1996). This question is distinct from the issue the Supreme Court addressed in *Drye*, which was whether (as determined by federal law) a particular interest (created by state law) qualified as "property" for purposes of § 6321. *See* 528 U.S. at 54. Here, by contrast, the parties urge me to resolve an issue pertaining to the very existence of a property interest. This is a question of state law. *See Oregon ex rel. State Land Bd. v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 378 (1977) (noting that state law governs issues relating to real property "unless some other principle of federal law requires a different result").

Maryland's fraudulent conveyance statute gives an aggrieved creditor a choice of two remedies: "(1) have to conveyance set aside or obligation annulled to the extent necessary to satisfy the claim; or (2) levy on or garnish the property conveyed as if the conveyance were not made." Md. Code Ann., Com. Law § 15-209(a); *see Meese v. Meese*, 69 A.3d 53, 60 (Md. Ct. Spec. App. 2013). Plaintiffs urged the Court to "set aside" the conveyance, and this is what I have ordered.

Admittedly, the term "set aside" carries with it some ambiguity. Black's Law Dictionary defines it to mean "to annul or vacate (a judgment, order, etc.)," *Set Aside*, Black's Law Dictionary (10th ed. 2014), leaving it less than entirely clear whether the term merely characterizes a legally unsustainable action or, rather, erases it, as though it never existed. The rest of the statutory text, though, leaves less doubt about the Maryland legislature's intent. The term "annul," for starters, connotes a "retroactive obliteration" of an unlawful act, "restoring the parties to their [previous] positions." *Annulment of Judgment*, Black's Law Dictionary (10th ed. 2014). Similarly, subsection (2) entitles a creditor to "levy or garnish the property conveyed *as if the conveyance were not made.*" Md. Code Ann., Com. Law § 15-209(a)(2). These provisions

15

protect creditors in substantially similar ways. In each case, the creditor may ask the Court to roll back the consequences of the unlawful transaction, returning him to the *status quo ante* – the position he would have been in had the transaction never occurred.

The United States argues in its surreply that conveyances found fraudulent under MUFCA are voidable, rather than void *ab initio*. U.S. Surreply 2-3. I am persuaded that this is true. In my view, though, the United States is mistaken about the import of these terms in this case.

The Maryland Court of Appeals has explained why it is often critical to distinguish deeds that are void from those that are merely voidable. *See Julian v. Buonassissi*, 997 A.2d 104, 119-20 (Md. 2010). A deed that is void *ab initio* is void from its inception and has "no legal effect." *Id.* Consequently, a subsequent bona fide purchaser with no notice of the prior fraud is unprotected and does not take title. *Id.* at 120 (citing *Harding v. Ja Laur Corp.*, 315 A.2d 132, 136 (Md. Ct. Spec. App. 1974)). A voidable deed, by contrast, protects innocent buyers in the chain of title. *Id.*

MUFCA expressly protects subsequent bona fide purchasers. Section 15-209(a) states that the remedies available to creditors apply "as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase or one who has derived title immediately or immediately from such a purchaser." Md. Code Ann., Com. Law § 15-209(a). This language envisages the possibility that a transferee who acquired property via a fraudulent conveyance may later deliver valid title to an innocent purchaser. This result would seem incongruous if the fraudulent conveyance rendered title void *ab initio*. *See, e.g., In re Hirsch*, 339 B.R. 18, 29 (E.D.N.Y. 2006) (holding that a fraudulent conveyance was voidable, rather than void *ab initio*, under a substantially similar provision of New York's Debtor and

Creditor Law); *see also In re Northlake Dev., L.L.C.*, 614 F.3d 140, 144 (5th Cir. 2010) (examining Mississippi law); *In re Smythe*, 32 B.R. 736, 737 (D. Colo. 1983) (interpreting Colorado's fraudulent conveyance statute).

While I agree with the United States that a fraudulent conveyance under MUFCA is voidable, I do not agree that this conclusion settles the issue here. To say that a transaction is either voidable or void *ab initio* is to prescribe the steps a party must take, if any, to avoid the transaction. If a transaction was void from the outset, there is no need to involve the courts; the transaction has no legal effect and never did. If, however, the transaction is merely voidable, then a party seeking invalidation must take action "to uncover the fatal flaw in the transaction." *In re Smythe*, 32 B.R. at 737. This action, once taken, will put the transaction's validity at issue. A court may, in turn, decide the transaction was unlawful and choose, as I have here, to set it aside. When it does, the statutory scheme (or common law) will dictate the contours of the court's selected remedy. While it is conceivable that, in some cases, the law may treat the transferee as having held title during the period between the unlawful transfer and the entry of the court's judgment invalidating it, it is more likely – and, indeed, more equitable – that the law will seek to restore all parties to the positions they held before the unlawful activity.

*McBriety v. Spear*, 60 A.2d 528 (Md. 1948), illustrates the point. There, a developer and his wife sought to keep an underaged homebuyer's deposit on a new house after the homebuyer disaffirmed the contract of sale. 60 A.2d at 528-29. The Court of Appeals recognized the contract as voidable, meaning the underaged party had the option of disaffirming it within a reasonable time after turning 21 years old. *Id.* at 530. The Court then explained: "Upon such disaffirmance the contract *becomes null and void ab initio*, and the vendor is bound to repay all money that he has received under the contract from the minor." *Id.* (emphasis added). The

developer and his wife were not entitled to reap the benefits of the voidable transaction, once the homebuyer had taken the necessary steps to avoid it. *Id.* at 531.

A considerably more recent case demonstrates this principle's applicability in the MUFCA context. *In re MS Grand Inc.* involved a lease agreement that was guaranteed by a company called Supervalu. No. 11-10200-RGM, 2014 WL 2795239 (Bankr. E.D. Va. June 19, 2014). The guarantee terminated when the tenant, who was then in Chapter 7 bankruptcy proceedings, assigned the lease to another business. *Id.* at *1. When the Chapter 7 trustee argued, successfully, that several of the tenant's lease payments in the months leading up to the assignment were fraudulent under MUFCA, the landlord pursued a third-party complaint against Supervalu, insisting the guarantee continued to cover the challenged payments even though it had since been terminated. *Id.* The district court agreed with the landlord, explaining:

> This case is no different than if the landlord had not been paid the rent in the first place. If the rent was not paid at any time it was due, the landlord would have been entitled to look to the guarantor [Supervalu] for payment. [Supervalu] would not be entitled to assert a defense under the release because it became effective after the rent was due. In this case, if the transaction is void, it is as if the landlord had not been paid the rent due to it under the lease and the landlord would be entitled to look to the guarantor.

*Id.* at *2.

The general rule, as the court recognized in *In re MS Grand*, is this: "When [a] fraudulent transfer is avoided, the parties are restored to their previous positions." 2014 WL 2795239, at *1 (quoting *In re Best Prods. Co.*, 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994)). That is what my Order does here. Mr. Bradford's conveyance of the Morningside Drive property was fraudulent under MUFCA, and in setting it aside, I am returning all parties to the positions they held before the fraud. I conclude that, as a matter of law, the property never belonged to Mr. Bradford and could

not have been subject to his tax liens under 26 U.S.C. § 6321. The United States's Cross-Motion for Summary Judgment is denied.

## CONCLUSION

The facts of this case are unusual, and it is easy enough to see why. As the case law amply demonstrates, many a debtor has tried to evade creditors' claims by conveying property to a third party. *See generally Turner v. Hudson Cement & Supply Co. of Balt. City*, 104 A. 455 (Md. 1918) (chronicling 19th and early-20th century fraudulent conveyance cases in Maryland). One assumes that far fewer debtors have attempted what Mr. Bradford did here – that is, convey an encumbered property to someone who is himself in debt to lienholders. Under these unusual circumstances, it would hardly be equitable to penalize the estate's creditors because of the personal representative's attempted fraud. While the United States notes in its surreply that there may nevertheless be sufficient equity in the property to cover both the federal tax liens and Plaintiffs' claims, that fact is not a given, and it is not relevant to my decision here. I conclude that Mr. Bradford's federal and state tax liens do not apply to the Morningside Drive property upon its return to the estate following this Memorandum Opinion and Order. If, as it happens, the property remains in the estate after the successor personal representative makes the necessary distributions to Plaintiffs, the tax liens will apply to Mr. Bradford's interest in the property at that time.

A separate Order follows.

12/4/2018

Paul W. Grimm
United States District Judge